TRIESTE, INC., II, PLAINTIFF-RESPONDENT, v. TOWNSHIP OF GLOUCESTER, DEFENDANT-APPELLANT.

GROUPCO, A NEW JERSEY PARTNERSHIP, PLAINTIFF-RESPONDENT, v. GLOUCESTER TOWNSHIP, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 16, 1986—Decided February 9, 1987.

Before Judges ANTELL, BRODY and D'ANNUNZIO.

*Andrew Weber* argued the cause for appellant.

*George W. Matteo, Jr.,* argued the cause for respondent Trieste, Inc., II (*George W. Matteo* and *Joseph A. Corbo, Jr.,* on the brief).

No brief was filed on behalf of respondent Groupco.

The opinion of the court was delivered by

BRODY, J.A.D.

We granted defendant Township of Gloucester leave to appeal in this exclusionary zoning case. In keeping with the Supreme Court's opinion in *Hills Dev. Co. v. Bernards Tp. in Somerset Cty.,* 103 *N.J.* 1 (1986), the trial judge granted Gloucester's motion to transfer the case to the Council on Affordable Housing (the Council). Gloucester appeals from a portion of the order that made the transfer "subject to the condition that the Defendant pay the costs incurred by the Plaintiffs from November 2, 1985, primarily with regard to their partic-

ipation in the site suitability hearing."[1]  We provided in our order granting Gloucester's motion for leave to appeal that the appeal shall have no effect on the transfer.  We reverse the condition in the order requiring Gloucester to pay costs.

These two actions, consolidated in the trial court, were commenced during the summer of 1984.  On June 19, 1985, the parties agreed that Gloucester's fair share of low and moderate income housing units was 470.  At that point the judge had to approve the agreement, resolve a dispute over whether plaintiffs' sites were suitable and fashion a builder's remedy if plaintiffs prevailed.  On July 2, 1985, the Fair Housing Act (the Act), *N.J.S.A.* 52:27D–301 *et seq.*, became effective.  It provided that any party to an exclusionary zoning case commenced more than 60 days before the effective date of the Act could move to transfer the case to the Council.  "In determining whether or not to transfer, the court shall consider whether or not the transfer would result in a manifest injustice to any party to the litigation."  *N.J.S.A.* 52:27D–316a.[2]

Gloucester did not move to transfer until March 3, 1986, 11 days after the Supreme Court held in *Bernards* that "the Legislature intended *all* pending *Mount Laurel* cases to be transferred, except where unforeseen and exceptional unfairness would result."  *Bernards*, 103 *N.J.* at 49 (emphasis in original).  *Bernards* rejected the argument that a manifest injustice would result from transferring cases that had advanced in court almost to completion.  *Id.* at 51.

Once a case has been transferred, the municipality must "file a housing element and fair share plan with the council within

---

[1]Trieste certified that its costs were $37,945.18, all but $174.86 being attorneys' fees.  Groupco certified that its costs were $188,773.03: $150,000 for its principals' lost investment, $38,582.80 for attorneys' fees and $190.23 court costs.  Gloucester appealed before the trial judge had an opportunity to consider these applications.

[2]The Legislature inadvertently omitted the designation "a" to the first paragraph of *N.J.S.A.* 52:27D–316.

five months from the date of transfer, or promulgation of criteria and guidelines by the council ... whichever occurs later ... [or] jurisdiction shall revert to the court." *N.J.S.A.* 52:27D–316a.[3] The Court made it clear, however, that once a municipality transferred its case to the Council an attempt by it to return the case to court shortly before the Council was to take final action "would constitute a gross perversion of the purposes of the Act, as well as an imposition on both the courts and the Council." *Bernards,* 103 *N.J.* at 58.

Thus by moving to transfer, Gloucester essentially submitted to the ultimate jurisdiction of the Council. Should it later attempt to return the case to court, the court could then consider the imposition of costs. *See R.* 4:37–4 (a court may order payment of costs of an action that a plaintiff had voluntarily dismissed if the plaintiff commences a new action based on the same claim).

The trial judge assessed costs because he believed that Gloucester should have moved to transfer the case soon after the Act was adopted in July 1985 rather than soon after *Bernards* was decided in February 1986. He noted that if Gloucester had acted earlier, plaintiffs would not have incurred the expenses attendant upon an adjudication of the site suitability issue which was tried for three days and decided in plaintiffs' favor in an oral opinion rendered February 11, 1986. Gloucester moved for transfer 20 days later.

■ The Act does not place a deadline within which a municipality must move to transfer exclusionary zoning cases that were "instituted more than 60 days before the effective date of this act." *N.J.S.A.* 52:27D–316a. Nevertheless, the trial judge retroactively imposed a deadline of four months from the effective date of the Act for Gloucester to move to transfer if it

---

[3]The Act required the Council to adopt criteria and guidelines within "seven months after confirmation of the last member initially appointed to the council, or January 1, 1986, whichever is earlier...." *N.J.S.A.* 52:27D–307c.

was to avoid reimbursing plaintiffs for the expenses they thereafter incurred in the litigation. He found support in the Act for this approach by drawing an analogy to the protection from new exclusionary zoning litigation given a municipality for four months after the effective date of the Act. That protection is continued thereafter without interruption only if, within the four-month period, the municipality adopts a resolution of participation in the legislative plan. *N.J.S.A.* 52:27D–316b and –309a. The judge reasoned that because the Act exposes a municipality to litigation after the four-month period if it elected not to participate, the Act exposes Gloucester to the payment of its adversaries' litigation costs incurred after the four-month period if, in effect, it elected not to participate through its failure to move for transfer.

The Act does not require that a municipality in litigation more than 60 days before its effective date make an election within any period to avoid paying its adversaries' litigation costs. The Legislature gave municipalities four months' protection from new litigation to encourage their early participation. Where a municipality was already in litigation more than 60 days before the Act's effective date, the Legislature did not penalize it if it failed to move to transfer to the Council within a certain time. The Legislature was apparently satisfied that the dynamics of the litigation itself would furnish the municipality sufficient incentive to transfer. It cannot be said that Gloucester elected to forego transfer by its failure to move to transfer to the Council within a four-month statutory deadline that does not apply in this case.

Apart from what the Act may authorize, a court has inherent power to impose sanctions on litigants and the Rules of Court expressly empower a court to impose sanctions in certain instances. A court has inherent power, for instance, to require a defendant to reimburse a plaintiff for its litigation expenses, including counsel fees, as a condition to dismissing an action under the doctrine of *forum non conveniens. Vargas v.*

*A.H. Bull Steamship Co.*, 25 *N.J.* 293, 295–296 (1957), *cert.* den., 355 *U.S.* 958, 78 *S.Ct.* 545, 2 *L.Ed.*2d 534 (1958). *Rule* 4:37–1(b) authorizes a court to allow a plaintiff to dismiss an action "upon such terms and conditions as the court deems appropriate." *See Union Carbide Corp. v. Litton Prec. Prods., Inc.*, 94 *N.J.Super.* 315, 317 (Ch.Div.1967). We conclude, however, that the trial judge should not have exercised his power to sanction Gloucester.

■    The trial judge was mainly concerned that by not having made an earlier motion to transfer, Gloucester required plaintiffs to incur expenses to litigate the site suitability issue and then unfairly rendered those proceedings worthless by moving to transfer after the issue was decided favorably to plaintiffs. Although the trial judge made no findings regarding Gloucester's motives, his oral opinion suggests that he was not only concerned that Gloucester was responsible for waste but also may have acted in bad faith by speculating on the outcome of the site suitability issue.

The trial judge's concern for waste was not entirely justified in view of the availability to the Council of the record developed in the litigation. After holding that the doctrine of collateral estoppel does not apply in cases before the Council as to matters stipulated and decided in prior litigation, *Bernards* nevertheless noted:

> At the same time, we underscore that the agencies now involved in this field are free to use the records developed in litigation, including any interim orders or stipulations entered, for such purposes as they deem appropriate. [*Bernards*, 103 *N.J.* at 60]

As to bad faith, it is not clear that Gloucester's motion to transfer was inspired by the adverse turn its case took in court. It may well have been inspired by learning from *Bernards* that transfer of a case so far along in court would not be a "manifest injustice." In any event, the fact is that Gloucester moved to transfer and thereby fell in line with the goals of the Act. In its consideration of this point, the Court said:

From the point of view of the State, however, instances of bad faith are irrelevant. The Legislature determined that the goals of the Act were so important that it should, in effect, be given retroactive force by the transferring of preexisting litigation to the Council. The importance of these legislative objectives forecloses a result that would deprive a municipality and its citizens of the Act's benefits because of the asserted bad faith of a municipal official. [*Bernards*, 103 *N.J.* at 53]

Although imposing costs on a municipality is not the same as denying it participation in the goals of the Act, we understand *Bernards* to mean that courts are to let pre-Act exclusionary zoning cases go to the Council without the imposition of costs at this time even if there may be reason to believe that the municipality has been recalcitrant and obstructive.

The order assessing Gloucester costs is reversed.